IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| MAJORIE WHITAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:22-cv-00056 |
| | § | |
| | § | JURY DEMANDED |
| | § | |
| NACOGDOCHES MEMORIAL | § | |
| HOSPITAL CORPORATION | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Majorie Whitaker hereby files this, her Original Complaint, against Defendant Nacogdoches Memorial Hospital Corporation for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I.  PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Majorie Whitaker ("Plaintiff" or "Whitaker") is currently a citizen and resident of Nacogdoches, Texas.

2.      Defendant Nacogdoches Memorial Hospital Corporation ("Nacogdoches Memorial" or "Defendant") is a Texas non-profit corporation.  Defendant's main offices are located at 1018 N. Mound Street, Nacogdoches, Texas 75961. Defendant operates a hospital and medical clinic in Nacogdoches, Texas where Plaintiff was employed.

3.      Nacogdoches Memorial Hospital Corporation will be served by delivering the summons and complaint to its registered agent for service, Ella B. Nobles, 1018 N. Mound Street, Nacogdoches, Texas 75961.

4.      This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 as Plaintiff is claiming violations of the Americans with Disabilities Act.

5.      Venue exists in this district and division as detailed in 28 U.S.C. §1391.

6.      Most of the acts alleged herein occurred in Nacogdoches County, Texas.

## II.      FACTUAL BACKGROUND

7.      Plaintiff worked in the housekeeping department cleaning offices at Nacogdoches Memorial Hospital.  Plaintiff worked for the hospital from May 19, 2009, until she was terminated on or about March 13, 2021.

8.      On March 19, 2020, Plaintiff was cleaning the doctor offices and other offices that she normally cleaned on a daily basis.  Plaintiff moved a couple of chairs, and felt a horrible pain shoot from her left shoulder down.  Plaintiff stopped cleaning and waited a few minutes, but the pain did not go away.  Thereafter, Plaintiff went to the hospital on the 2nd floor and reported the on-the-job injury to her manager, Keith Fuller.  Plaintiff told Fuller that she needed to go to the ER.  Fuller ordered Plaintiff to go to Michelle McCollum.

9.      At her manager's instruction, Plaintiff went to the 1st floor to McCollum's office.  McCollum gave Plaintiff on-the-job injury paperwork to fill out and take it to the ER staff.  Plaintiff then went to the ER where they took x-rays, blood and urine samples. The results came back with a torn muscle.  The ER doctor gave Plaintiff a prescription for pain meds and a muscle relaxer.  The ER doctor also told Plaintiff to go to her doctor before returning to work.  Plaintiff gave the paperwork to Michelle McCollum, and she made a copy.  A workers compensation claim was filed on behalf of the Plaintiff in connection with her on-the-job injury.

10.      The next day Mrs. Katherine Russell in HR called Plaintiff and told her to go to Urgent Care, but Plaintiff was already in Dr. Karla's office, one of the hospital doctors.  Thereafter, Plaintiff had to start going to the Urgent Care, Dr. Kathy.  Dr. Kathy put Plaintiff on light duty, but

her supervisor Keith Fuller ignored Plaintiff's work restrictions and kept her doing what she had been doing when she was injured.

11.     Plaintiff went back to the doctor and told her that her shoulder was hurting worse, so she ordered an MRI.  After getting the results of the MRI, Plaintiff chose to see Dr. Overturf who put Plaintiff in physical therapy.

12.     October 12, 2020, Dr. Overturf put Plaintiff on light duty and told her not to use her left arm.  Plaintiff took the paperwork to Mrs. Katherine's office.  She said "if the doctor does not want you to use that arm there is nothing you can do" - that is that there was no accommodation available to Plaintiff.  Plaintiff told Mrs. Katherine that she was able to check people in for the Covid.  She said that is not with the hospital. Mrs. Katherine said she would talk to Keith Fuller (her supervisor) and Michelle McCollum (the doctor) the next day and call her.

13.     Mrs. Katherine called Plaintiff and said she could go ahead and take off and reported the injury to workers comp.  Plaintiff was off from October 13, 2020 to December 31, 2020, based upon Mrs. Katherine's orders.  Plaintiff had her shoulder surgery January 4, 2021. Plaintiff was supposed to return to work on April 24, 2021, and she gave the proper paperwork to the hospital stating that date for her return.

14.     Plaintiff received a letter dated March 22, 2021, terminating her employment as of March 13, 2021.

### III.     CAUSES OF ACTION

### A.     AMERICANS WITH DISABILITIES ACT

15.     The allegations contained in previous paragraphs are hereby incorporated by reference.

16.     As a result of her medical conditions described herein, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities

Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff had impairments that substantially limits one or more of her major life activities, has a record of such an impairment, and/or was regarded by Defendants as having such an impairment.

17.     Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8).  More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as a housekeeper for the hospital.

18.     The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability within the meaning of the ADA. Based upon the stated allegations, Plaintiff asserts five claims under the ADA: (1) Disparate treatment based upon Defendant's termination of Plaintiff based upon qualification standards and other criteria that screened her out as an individual with disabilities; (2) Disparate impact based upon the Fitness-for-Duty policy which requires a full-duty release which had an adverse impact on Plaintiff as an individual with disabilities by screening Plaintiff from employment by reason of her impairment related to the recovery from her surgery; and (3) failure to make reasonable accommodation to Plaintiff's disabilities, which constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A) and (5) regarding Plaintiff as disabled. In connection with Plaintiff's accommodation claim, Defendant failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make any reasonable accommodation with Plaintiff.

## B.    FAMILIY AND MEDICAL LEAVE ACT

19.     The allegations contained in previous paragraphs are hereby incorporated by reference.

20.     Prior to Plaintiff's termination by Defendant, she had worked for Defendant for more than twelve (12) months, and for more than 1,250 hours during that twelve-month period.

21.     Defendant employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked.

22.     Plaintiff had not taken twelve (12) weeks off work for a serious health condition, or otherwise, during the twelve-month period prior to (a) the onset of her serious health condition, or (b) the time of her termination.

23.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et. seq.

24.     Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

25.     During the time that Plaintiff was employed by Defendant, in 2021, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

26.     While Plaintiff was employed by Defendant, Plaintiff had an illness that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).

27.     Plaintiff was entitled to medical leave for her own serious health condition as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(C)).

28.     Defendant terminated Plaintiff's employment for the time she was forced to take off work to care for her serious health condition, which violates the protections of the FMLA as outlined in 29 U.S.C. § 2615(a).

## C.  SECTION 451 – TEXAS LABOR CODE

29.     The allegations contained in previous paragraphs are hereby incorporated by reference.

30.     Plaintiff would show that Defendant discharged her on or about March 13, 2021

and discriminated against her in violation of § 451.001 of the Texas Labor Code because she filed a workers' compensation claim in good faith, hired a lawyer to represent her in a workers' compensation claim, and instituted or caused to be instituted a workers' compensation claim in good faith.  Plaintiff would show that Defendant would not have terminated her employment when it did, had Plaintiff not engaged in an activity protected under § 451.001 of the Texas Labor Code.

## IV.      DAMAGES

31.     As a result of Defendants' violations of the ADA described herein, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future) and compensatory damages in an amount that has not yet been fully established, but which will be provided at time of trial.

32.     As a result of this willful and malicious violation of the law described herein, Plaintiff requests that she be awarded all damages, to which she is entitled, including punitive damages.  Plaintiff also requests any additional equitable relief to which she is entitled.

33.     As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

34.     As a result of this willful violation of the FMLA, Plaintiff requests that she be awarded all damages, to which she is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest.  In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable compensation described above.  Plaintiff also requests any additional equitable relief to which she is entitled.

35.     Plaintiff also alleges damages resulting from her wrongful discharge under Section 451 of the Texas Labor Code in the form of lost wages and benefits in the past and future,

compensatory damages and punitive damages.

36.     Plaintiff also requests reasonable attorney's fees and court costs.

## V.     JURY DEMAND

37.     Plaintiff requests trial by jury on all claims for which a jury trial is available.

## VI.     PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a.     Judgment against Defendant for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay) and compensatory damages in an amount to be determined;

b.     Judgment against Defendant for punitive damages for the maximum amount allowed by law;

c.     Judgment against Defendant for liquidated damages;

d.     An order that Defendant take such other and further actions as may be necessary to redress Defendants' violations of the law;

e.     Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f.     Costs of suit, including attorney's fees;

g.     The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone and Facsimile

ATTORNEY FOR PLAINTIFF